72 So.2d 39 (1954)
LOVE et al.
v.
HANNAH et al.
Supreme Court of Florida. En Banc.
March 23, 1954.
Rehearing Denied May 7, 1954.
*40 Broad & Cassel, Miami Beach, and Cushman, Gay & Woodard, Miami, for appellants.
Pepper, Orr & Faircloth, Miami, for appellees.
DREW, Justice.
The primary and controlling question in this appeal is whether an administrator may maintain a suit under the wrongful death statute, Sections 768.01 and 768.02, Florida Statutes 1951, F.S.A., in the absence of an affirmative showing of the non-existence of any other person having a precedent right of action under the statute. The determination of this question  and particularly the disposition of this appeal involves collateral questions which we will discuss hereafter.
The suit was instituted by the administrators of the estate of Estelle Hannah on December 5, 1951, over three months after the death of the decedent. The complaint was cast in two counts, one for damages under the wrongful death statute, supra, and the other for damages under the survivor's statute, Section 45.11, Florida Statutes 1951, F.S.A. So far as the principal question herein concerned the following parts of the complaint are pertinent:
"1. Plaintiffs are the duly appointed and acting administrators of the estate of Estell Hannah, deceased, and reside in Tallahassee, Florida. They bring this suit on behalf of their decedent, Estell Hannah, as personal representatives of deceased for the wrongful death of said deceased. No *41 husband, nor minor child, nor anyone dependent upon deceased, now survives the said deceased.

* * *
"6. On or about the 3rd day of September, 1951, plaintiffs' decedent, Estell Hannah, a passenger for hire, was riding, en route from Miami to Opa Locka, Florida, in the said automobile or taxicab hereinabove described, operated by defendant, Willie Love, for and on behalf of the defendant owner, Goldsmith Cab Company, or Will Goldsmith, or Will Sawyer, or Will Goldsmith and Will Sawyer, jointly. The defendant, Willie Love, on the date aforesaid, at the hour of approximately 5:30 A.M., so negligently and carelessly maintained, operated, and controlled the said automobile that it was caused to crash into a clearly marked barricade on the east side of a certain bridge located at N.W. 155th Street and 27th Avenue in Miami, Dade County, Florida. As a direct and proximate result of the negligence and carelessness of the defendant, plaintiffs' decedent, Estell Hannah, was wrongfully mutilated and killed and the estate of the said Estell Hannah, deceased, suffered damages in that the size of the estate was diminished and funeral expenses were incurred. In this connection, plaintiffs further say that the estate became indebted for funeral home services in Miami, the cost of transporting deceased to Tallahassee, Florida, from Miami, Florida, and for funeral home services in Tallahassee." (Emphasis added).
The plaintiffs' right of action under the wrongful death statute must be determined by the facts existing at the time of the death of decedent. Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911. The allegations in the complaint that no husband etc. "now survives the deceased" (Emphasis added) does not necessarily mean that such persons were not living at the time of death. In Benoit v. Miami Beach Electric Co., 85 Fla. 395, 400, 96 So. 158, 159, this Court held that, "The existence or nonexistence of any one having the precedent right of action under the statute enters into the very substance of the right of action itself when instituted by any of the named classes of persons after the first; and, when the suit is brought by any of these different classes, except the widow or husband, the declaration, in order to show a cause of action should affirmatively show the nonexistence of any other person having a precedent right of action over the plaintiff under the statute."
On the question of whether there was a right of action in the administrators under this statute as construed by this Court the following portions of the evidence of one of the plaintiffs at the trial are significant:
"Q. Estelle, at the time of your mother's death, was she supporting any of her children  any of her 11 living children? A. The baby girl, Alberta.
"Q. How old is she? A. She is 23 now.
"Q. Why was it necessary to support her  wasn't she able to work?
"Mr. Cushman: I object to that question, and submit to the Court it is not material, and doesn't enter into the question of amount of damages.
"The Court: Sustained.
"Mr. Faircloth: Your Honor, I believe that answer to that question, if you please, would indicate that the girl, 23 years old, required the support from the deceased and still does require support from someone. She was dependent upon the decedent. (Emphasis added.)
* * *
"Q. (By Mr. Faircloth) Estelle, are you and your brother, Caleb Hannah, appointed as administrators of the estate of your mother? A. For sure.
"Q. Serving in that capacity now? A. Sure."
*42 There is also a deposition in the record (referred to in and used in support of the motion for summary judgment hereafter discussed) in which Caleb Hannah testified that his mother "was supporting my baby sister [Alberta]" and that "My mother was supporting her. * * * In other words she is kind of absent minded. * * * In other words, I'd say my mother taken care of her, fully supported her because she never worked enough to buy shoes to wear." (Emphasis added.) In the same deposition, Estelle Hannah Love testified there was also a brother named William (then in Korea) who was 20 years old at the time of his mother's death.
An examination of the record in this case convinces us that the precise question of whether the administrators had a right of action under the wrongful death statute and the necessity of proving the non-existence of those having a prior right over the plaintiffs to maintain the action, was never considered by counsel for the plaintiffs or defendants or the court until after the trial was concluded, when it was raised on a motion for summary judgment. For instance, the motion to dismiss the complaint, directed to the whole complaint, had only the ground, viz. that it failed to state a claim upon which relief could be granted. Obviously, it was not error to overrule this motion, because the complaint was adequate to recover damages under Section 45.11, Florida Statutes 1951, F.S.A. See Brown v. Pennsylvania Sugar Co., 95 Fla. 116, 116 So. 72; Hawkins v. Shore Acres Properties, 93 Fla. 671, 112 So. 61.
The objection by Mr. Cushman, defendants' attorney, to the question of whether it was necessary to support the "baby girl," Alberta (heretofore quoted) was on the ground "it is not material and doesn't enter into the question of amount of damages" (emphasis added) and Mr. Faircloth's reply that this girl "required the support from the deceased" clearly was insufficient to call the point to the attention of the trial judge, and leaves the clear impression that counsel for both parties had failed to take into account the requirements of the statute. This is further borne out by the fact that, at the conclusion of all the evidence offered by the plaintiff (defendant offered none) counsel for defendant stated to the Court:
"Mr. Cushman: We move the Court to instruct the jury the only question submitted to them is damages. There is no use to fool around about it, that is the only question before the jury."
The jury returned a verdict in favor of plaintiffs for $10,000. The verdict was not apportioned as to the items of damage and it is impossible to tell what amount is for damages under Sections 768.01 and 768.02, supra, and what amount is for damages under Section 45.11, supra.
Motion for new trial was made and denied. While the first ground of such motion is that the verdict is "contrary to the law and evidence," the motion is principally directed at the amount of the award. Nowhere in the motion is there a particular reference to the fact that the record failed to establish the right of action in the plaintiffs under the count for wrongful death. This motion was filed March 5, 1953. On March 17, 1953, before disposition of motion for new trial or entry of final judgment, defendants filed a motion for summary judgment. This motion, inter alia, alleged that the evidence conclusively establishes the fact that plaintiffs "have no right of action and are not entitled to maintain this suit for the alleged wrongful death of Estelle Hannah." Further:
"(1) It clearly appears that said Estelle Hannah, deceased, was survived by a minor child, to-wit: William Hannah, in whom any supposed right of action or cause of action became vested by Section 768.02, Florida Statutes; or
"(2) That at the time of the death of the said Estelle Hannah, there was a person dependent upon her for support, to-wit: Alberta Hannah, and Section 768.02, Florida Statutes, vested any supposed right of action for the death of the said Estelle Hannah, Deceased, *43 first in said minor child, and second, if there were no minor child, then in any person dependent upon said decedent for support, and in the absence and only in the absence of either of said two beneficiaries, in said Administrators."
The record does not show when the motion for new trial and motion for summary judgment were presented to and argued before the lower court. The orders denying the motion for new trial and entering the final judgment were dated March 31. The order denying the motion for summary judgment entered two days later on April 2 recited that such motion "was not brought to the attention of the court until after a hearing was had on defendants' motion for a new trial and after the entry of an order denying the defendants' motion for a new trial, and after entry of judgment" and was therefore denied "on the ground it was filed and presented to the Court too late."
Without passing upon the question of whether the motion for summary judgment was timely presented, such motion raising a point that went to the very foundation of the right of action, was on file at the time the motion for new trial was argued and before it was denied and final judgment entered. There is no doubt about the fact that the lower court had knowledge of its contents within three days from the date the judgment was entered, and during the term at which it was rendered. See Section 26.32, Florida Statutes 1951, F.S.A.
In Perrin v. Enos, Fla., 56 So.2d 920, 922, we said:
"This Court is committed to the general rule of law that all judgments, decrees or other orders of the Court, however conclusive their character, are under the control of the Court which pronounced them during the term at which they are rendered, or entered of record, and they may then be set aside, vacated, modified, or annulled by that Court. But it is a rule equally well established, that after the term has ended all final judgments and decrees of the Court pass beyond its control, unless steps are taken during the term, by motion or otherwise, to set aside, modify or correct them. Orders, decrees or judgments made through fraud, collusion, deceit or mistake may be opened or vacated or modified at any time on the proper showing made by the parties injured. Alabama Hotel Co. v. J.L. Mott Iron Works, 86 Fla. 608, 98 So. 825."
In answer to appellants' contention that the record here requires a reversal of this cause for a new trial the appellees say that the statement by defendants' attorney at the conclusion of the introduction of the evidence that the only question to be submitted to the jury was one of damages (heretofore quoted) and subsequent statements made by said attorney along the same line and to the same effect in open court, were concessions by him that all issues were determined except that of damages, and that "he may not, on appeal, make claims inconsistent with admissions freely given in the trial court," citing in support thereof 4 C.J.S., Appeal and Error, § 241 and Panama City v. Federal Reserve Bank of Atlanta, 5 Cir., 97 F.2d 499.
It is generally true that on appeal the parties are restricted to the theory of the case as tried in the lower court. 4 C.J.S., Appeal and Error, § 241(a), p. 465. This principle has certain well recognized exceptions, one of which is that if an error in the lower court affects fundamental rights, it may be raised for the first time on appeal. 4 C.J.S., Appeal and Error, § 242, p. 485. Moreover, in this case it can not be said that the question which we are discussing was raised the first time here. On the contrary, the motion for new trial, on the ground that the verdict was contrary to the law and the evidence, raised the question in its broadest sense, and the motion for summary judgment  even if not properly filed  brought such fact to the Court's attention during the term and a review of the lower Court's ruling on those points is not raising the question here for the first time.
*44 Then, again, an effective admission imparts knowledge of the legal effect of the fact admitted and we are convinced that neither plaintiffs' attorney nor defendants' attorney realized the legal effect of the alleged admission when it was made. Furthermore, the power of an attorney to make such an admission which would effectively bind his principal is very doubtful. See State ex rel. Personal Finance Co. v. Lewis, 140 Fla. 86, 88, 191 So. 295, 296, where we said:
"* * * It is quite true that in matters of procedure or practice which affect solely the conduct of a cause, an attorney may bind his client but this is not the rule as affecting the merits. The question of dismissal is one that goes to the merits and cannot be effectively done without the consent of the client."
We have carefully examined Panama City v. Federal Reserve Bank, etc., supra. The facts there are so different from those in this case that it cannot be said to be authority for appellees' contention. There the question of the ownership of a note was, to use the Court's exact language, "presented first in the briefs, with nothing in the record of the trial, or in the assignments of error, to support it." [97 F.2d 500.]
We therefore conclude that the Court was in error in not setting aside the final judgment and granting a new trial when the facts and the law as set forth in the motion for summary judgment were brought to his attention, even though three days after he had disposed of the motion for new trial and entered final judgment.
The judgment is in a lump sum and includes damages under both applicable statutes to which we have referred. The evidence as to the claim under the survivor's statute is wholly insufficient to support the total amount of the verdict. Therefore there is no basis on which it may be affirmed as to the cause of action under this Section.
The cause is hereby reversed with directions to set aside the final judgment and grant a new trial, with leave to the parties to file such further pleadings as shall be proper.
Reversed.
TERRELL, SEBRING and MATHEWS, JJ., and PATTERSON, Associate Justice, concur.
ROBERTS, C.J., and THOMAS, J., dissent.